FILOMENA HLADKY, APPELLEE, v. VACLAV ECKSTEIN ET AL., APPELLANTS.

272 N. W. 910

FILED APRIL 23, 1937.   No. 29877.

*Charles H. Slama* and *Beach Hinman,* for appellants.

*Fred C. Foster, contra.*

Heard before Goss, C. J., Eberly, Day, Paine and Carter, JJ., and Eldred and Chase, District Judges.

Eberly, J.

This is a consolidation of two actions, in the nature of creditors' bills, instituted by Filomena Hladky, plaintiff, against Vaclav Eckstein, Otile Eckstein, Mike Eckstein, and Emil Eckstein, defendants. Vaclav Eckstein and Otile Eckstein were and are husband and wife. Mike Eckstein and Emil Eckstein are sons of Vaclav Eckstein.

The petitions are in the usual form. The transfers attacked are two, viz.: (1) A deed of conveyance executed and acknowledged by Vaclav Eckstein and wife, Otile Eckstein, on September 1, 1932, conveying to Mike Eckstein and Emil Eckstein, "in consideration of the sum of five thousand dollars, in hand paid," the west half of the northeast quarter and the east half of the northwest quarter of section 18, and the east half of the southwest quarter of section 7, all in township 16, range 6 east of the 6th P. M., in Saunders county, Nebraska, subject to encumbrance against the property estimated at $21,000. This deed was properly filed for record on September 2, 1932. (2) A bill of sale on September 1, 1932, executed by Vaclav Eckstein for a consideration recited in the instrument of conveyance as "the sum of five thousand dollars * * * in hand paid," purporting to bargain and sell to his sons, Mike Eckstein and Emil Eckstein, "all of the crops now growing and already gathered" on the premises above described, "also 12 head mixed cattle, 16 head mixed horses, 33 head large hogs, 40 head fall pigs," and farming implements particularly described therein.

After a hearing on the merits, the district court adjudged that 160 acres of the land described constituted the homestead of Vaclav Eckstein and family, was of less value than $2,000, and was therefore exempt and not subject to fraudulent alienation; but that as to the east half of the southwest quarter of section 7, township 16, range 6, Saunders county, Nebraska, the conveyance thereof by Vaclav Eckstein and Otile Eckstein to Mike Eckstein and

Emil Eckstein recorded on September 2, 1932, was fraudulent and void as to plaintiff, and the same was subjected to plaintiff's judgment lien. The court further found that the bill of sale did not enter into the litigation,' and entered no order concerning the personal property described therein. From the order of the trial court overruling their motion for a new trial, the defendants appeal.

As to the *bona fides* of these transfers, the principal evidence in the record as to the nature of the conveyances referred to is the testimony of Mike Eckstein and Emil Eckstein. Neither Vaclav Eckstein nor Otile Eckstein testified.

From the record as an entirety, it fairly appears that Vaclav Eckstein was insolvent at the time of the execution of these instruments; that the consideration ($5,000) set forth in each instrument of conveyance was false and untrue; that substantially all of Vaclav Eckstein's property was conveyed to his sons thereby; and, by reason thereof, his then creditors were necessarily prejudiced, hindered and delayed.

Under the uncontested facts in this case the application of the following principles is invoked:

A deed by a debtor to an immediate member of his family is presumptively fraudulent as to an existing creditor, and in litigation between the creditor and grantee on that issue, the burden is on the latter to establish the good faith of the transaction by a preponderance of the evidence. *Christensen v. Smith,* 123 Neb. 388, 243 N. W. 118; *Ayers v. Wolcott,* 66 Neb. 712, 92 N. W. 1036; *Glass v. Zutavern,* 43 Neb. 334, 61 N. W. 579; *Steinkraus v. Korth,* 44 Neb. 777, 62 N. W. 1110; *Jansen v. Lewis,* 52 Neb. 556, 72 N. W. 861; *Schott v. Machamer,* 54 Neb. 514, 74 N. W. 854.

"Where the circumstances under which a transfer of property by a debtor is made are suspicious, the failure of the parties to testify or to produce available explanatory or rebutting evidence is a badge of fraud. The presumption is that if they could have truthfully testified to facts show-

ing the *bona fides* of the conveyance they would have done so. It is wholly immaterial that their failure or refusal to do so is based on the advice of counsel." 27 C. J. 494.

This burden the defendants wholly failed to sustain in the record before us. From the evidence in the record, in view of the burden of proof, it is clear that the entire transaction of September 1, 1932, including the execution of the warranty deed in suit, was a sham created by the joint action of the defendants for the express purpose of hindering, delaying and defrauding the plaintiff in the collection of her judgments. While the evidence of defendants, by studied and palpable omissions, succeeded in disclosing the particulars of the transactions, in addition it also fairly appears that Vaclav Eckstein, then insolvent, disposed of a material portion of the property described in the bill of sale, secretly retaining, after its execution, a valuable interest therein for his own use and benefit and for the use and benefit of his family, with the acquiescence, express or implied, of Mike Eckstein and Emil Eckstein, the grantees thereof.'

On the subject of benefits retained and enjoyed by Vaclav Eckstein, the son Mike Eckstein further testified, as follows: "Q. Now, Mr. Eckstein, have you always lived with your father? A. Yes. Q. And you're still living with him? A. Yes, sir. * * * Q. Your father has always lived on this land that is in controversy? A. Yes, sir. Q. Prior to September, 1932, who lived with your father? A. Me. Q. And who else? A. Emil. Q. Who else? A. The rest of the kids. * * * Q. How many living with him now? A. Nine. * * * Q. And the situation there on the farm today is just like it was when you were 21, isn't it? A. Yes, sir. Q. There hasn't been any change at all, has there? A. Yes. Q. You're all living in the same house? A. Yes, sir. Q. And the children eating at the same table, the same as you did before? A. Yes, sir. Q. And your father has taken all that he needs for the support of his family? A. Yes, sir. Q. He has taken care of his family just the same? A. Yes, sir. Q. There hasn't been any change in that respect? A. No."

Emil Eckstein's testimony on this subject is: "Q. Now, your father is still living on this place? A. Yes. Q. And his family is still with him? A. Yes, sir. Q. All those that are under, age? A. Yes. Q. Now, you folks live there just the same as before you got this farm—before you and your brother got the farm, don't you—you all live there together, just the same? A. Yes, sir; we do. Q. There's been no change in the management of that place, has there, since that? A. No change."

What was actually done, particularly if continued for a considerable period of time with the acquiescence of all parties in interest, must be deemed to have been contemplated by the actual agreement as originally entered into by them. True, as a practical matter, while the existence of what amounts to a mutual contract between these parties on this subject-matter is thus clearly indicated, the palpable concealments by and in behalf of the sons have rendered as a matter of proof the exact nature of its obligations ambiguous. However, on the Ecksteins was imposed the duty of full disclosure. Besides, "A practical construction placed upon an ambiguous contract by the parties will generally be adopted by the courts." *Wilhoit v. Stevenson,* 96 Neb. 751, 148 N. W. 963. See, also, *Muller v. Pratt,* 108 Neb. 473, 187 N. W. 902; *School District v. Davis,* 76 Neb. 612, 107 N. W. 842.

In view of the evidence recited, and the further facts disclosed by the record, including manifest concealment by the defendants in their testimony, we deem as applicable the rule stated in *Graham v. Estate of Townsend,* 62 Neb. 364, 87 N. W. 169, viz.: "But where a fraudulent transfer of property, or choses in action, is made in trust for the use and benefit of the person making the same, it is void both as to existing and subsequent creditors."

So, also, "According to the weight of authority, a conveyance by one who is insolvent or in embarrassed circumstances, or by one who conveys all his property, in which the grantor secures to himself or to himself and family the right of future support by the grantee, is either *prima facie*

or conclusively fraudulent and void as to existing creditors; and the property so sold or conveyed may be subjected to their claims either in law or in equity." 27 C. J. 602.

In view of the entire record in this case, we find the allegations of plaintiff's petition amply sustained by the evidence adduced at the trial. Therefore, it follows that the judgment of the district court was, in all respects, correct and it is

AFFIRMED.